65 N.J. Super. 368 (1961)
168 A.2d 90
B-aka-L, PLAINTIFF,
v.
L, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided January 31, 1961.
*369 Mr. Felice Castelli, attorney for plaintiff.
Mr. Abraham Miller, attorney for defendant.
*370 NIMMO, J.S.C.
This is a nullity suit. Plaintiff was born in Italy on October 1, 1941. She came to the United States in 1954 and resided with her parents in Jersey City, New Jersey. In December 1956 she returned to Italy with her mother who in August of 1957 introduced her to the defendant. The plaintiff and defendant were married in a church wedding in Italy on October 31, 1957 with a religious ceremony. Both parents consented in writing to the marriage. Her father and mother are estranged and her father testified through an interpreter that he understood that his signing of the consent for his daughter to marry was to enable her to go to Italy and return to the United States. Following the marriage in Italy plaintiff and defendant lived in a home owned by defendant's relatives for five weeks. She testified that the marriage was not consummated. The defendant has a cheese store in Italy. He did not appear at the trial and defended the action by his attorney. Five weeks after the marriage plaintiff's mother paid for her passage back to the United States and the defendant remained in Italy.
Plaintiff was 16 years old when the marriage was performed. She was 15 years old when her mother introduced her to the defendant. She was still 16 years old when she returned to the United States. She has not seen the defendant since she left him in Italy. It was in 1957 that she came back to this country and the defendant took no action to have her return to him, neither did he send her any support. Her mother, who took her to Italy and introduced her to the defendant and supplied the wedding dress, is in Jersey City and available but did not appear at the trial.
In the case of Wilkins v. Zelichowski, 26 N.J. 370 (1958), the plaintiff was under 16 years of age when she married in Indiana, and did not confirm her marriage after she reached 18 years of age. Both parties were residents of this State when they ran away to get married. The Indiana statute provides that "females of the age of sixteen" *371 can marry, although if within the age of 18 a license cannot issue without the consent of the parents. After the marriage both returned to New Jersey. The marriage was annulled. In the case sub judice much was made of the fact that plaintiff's parents consented to the marriage in Italy, in writing, except that her father testified, through an interpreter, that he did not know it was a consent for his daughter to marry. His estranged wife, plaintiff's mother, could have helped clear this up but she did not appear. In the opinion of this court, while such consent may be required to obtain a license to marry, or for the marriage to be performed by a church, such consents do not make the marriage absolutely binding, as contended by defendant, if other facts are brought before the court in a nullity suit that would indicate relief should be granted.
On October 11, 1959 before plaintiff was 18 years of age she filed this suit to have the marriage annulled.
Defendant contends that the marriage being valid under the laws of Italy it must be recognized as binding upon the plaintiff in this State. Further, that as the husband determines the marital domicile, this plaintiff cannot establish one here while he is in Italy. Then, too, it is contended that plaintiff comes into court with "unclean hands," because she gave birth to a child on April 9, 1960, while this suit was pending, fathered by one other than the defendant.
It is elementary that the domicile of the husband is the domicile of the marriage and his wife. Further, that for a wife to establish a separate domicile from that of her husband it must be shown that the husband by some act or marital offense makes it possible for her so to do. It is admitted that this plaintiff was a resident of New Jersey when her mother took her to Italy and she married while there. Because of that marriage it is argued that plaintiff is now a domiciliary of Italy and this court is without jurisdiction. This court does not agree because of the facts in this case.
*372 The question is, why the marriage in Italy that plaintiff's mother was such a part of, even to paying for her daughter's return to this country? Why did not this mother testify? Could it be that this is another case of an arranged marriage so a man can come to this country? This court has had a number of such instances.
The doctrine of "unclean hands" raised by defendant is not one of easy application. The cases generally hold that this doctrine must touch directly the facts which are utilized to obtain relief. Ysern v. Horter, 94 N.J. Eq. 135 (Ch. 1922), has been cited by both parties. There, however, we do not have non-age as a basis for the action, but a charge of fraud. This court is of the opinion that in the case sub judice the actions of the plaintiff, while not condoned by the court, do not constitute "unclean hands" affecting her suit for nullity on the ground of non-age.
As a court of equity and parens patriae of infants and those under age, it must take cognizance of the public policy of this State "to discourage child marriages and to protect children from the consequences which a binding marriage involves." This was enunciated by Judge Goldmann in the case of In re Anonymous, 32 N.J. Super. 599, 608 (Ch. Div. 1954). In Taub v. Taub, 87 N.J. Eq. 624, 630 (E. & A. 1917), a denial of annulment was reversed notwithstanding that the parents had consented, and Justice Trenchard, speaking for the court, held that the Legislature had in effect declared that it does not care to enforce any public policy keeping marriages indissoluble when they are contracted under the circumstances presented to the court. In that case both parents consented to the marriage, as in the case sub judice.
It is the opinion of this court that under its general equitable powers, and taking cognizance of the public policy of this State as stated by Judge Goldmann, supra, "to discourage child marriages," this court must hold that a marriage arranged by a mother for her daughter to a man in a foreign country who did nothing to enforce his rights as a husband *373 for over two years, did not send her anything to enable her to return to him, and only came into court by an attorney when his wife sought to annul the marriage, that this marriage was one for his convenience and should be annulled because of the non-age of plaintiff. Defendant's attorney did state in court that the defendant wanted his wife to return to Italy to stomp grapes and make cheese. Neither a father nor a mother nor both of them can consent to or arrange such a marriage, for it is contrary to the public policy of this State.
In conformity herewith a judgment of nullity will be entered.